IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. CHAPEL


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

DANIEL M. CHAPEL, APPELLANT.


Filed April 7, 2026.    No. A-25-696.


Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Christopher Eickholt, of Eickholt Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.


MOORE, BISHOP, and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Daniel M. Chapel appeals from his plea-based conviction in the Lancaster County District Court for first degree assault, a Class II felony. Chapel assigns on appeal that his sentence of 49 to 50 years' imprisonment is excessive and that he received ineffective assistance of counsel in various respects. We affirm.

## II. STATEMENT OF FACTS

Chapel was originally charged with assault by strangulation or suffocation, a Class IIIA felony; attempted second degree murder, a Class II felony; and first degree assault, a Class II felony. Pursuant to a plea agreement, Chapel pled no contest to first degree assault, and the remaining charges were dismissed.

At the plea hearing, the district court first inquired of Chapel whether he was on any medications. Chapel responded that he was on two medications for depression and that he was

taking the medications as prescribed. He denied that taking the medications in any way interfered with his ability to understand what was happening at the hearing. Chapel was advised of his various constitutional rights and that he would be waiving those rights by entering a plea, to which Chapel indicated he understood. He affirmed that he was waiving his rights freely and voluntarily. Chapel indicated that he understood the penalties associated with a Class II felony. The State provided a factual basis indicating that on October 31, 2024, Chapel attempted to suffocate and strangle his wife Emily, which caused her to lose consciousness. He also made threats, indicating he intended to end her life. After strangling Emily, Chapel left the home. After she regained consciousness, Emily was found wandering outside and was ultimately located by police and taken to the hospital. Emily has suffered from vision impairment and headaches following the incident.

Chapel agreed that he had discussed the plea proceedings with his lawyer, who explained his rights, the charge against him, and the possible defenses that he might have to the charge. Chapel did not think there were any facts that might be helpful to his defense that he had not already discussed with his lawyer. Chapel affirmed that he told his lawyer everything he knew about the case and he was satisfied with the job his lawyer had done. He affirmed that he felt his lawyer was competent. Chapel agreed that he had enough time to talk to his lawyer about the case. Chapel denied that anyone made any threats or held out any promises to get him to waive his rights and enter the plea, and that no one made any promises or representations about what the actual sentence would be. Chapel stated his understanding that the sentence was entirely up to the court. Chapel's trial counsel affirmed that Chapel understood his rights, the consequences of waiving them, and that his plea was entered freely, voluntarily, knowingly, and intelligently.

The district court accepted Chapel's plea of no contest, finding that he was acting voluntarily, and he understood the nature of the charge, his rights, and the consequences of his plea. The court also found that Chapel did not appear to be under the influence of alcohol or drugs.

Following the preparation of a presentence investigation report (PSR), a sentencing hearing was held at which time the district court sentenced Chapel to 49 to 50 years' imprisonment, with credit for 288 days previously served.

Chapel appeals.

## III. ASSIGNMENTS OF ERROR

Chapel assigns that the sentence imposed by the district court was excessive and an abuse of discretion. Chapel also assigns that he received ineffective assistance of counsel because trial counsel did not (1) effectively advocate regarding Chapel's mental health history of depression, and related diagnoses, as an exculpatory factor for his guilt of the alleged offenses; (2) investigate or argue an intoxication defense and/or a diminished capacity defense because Chapel was improperly or overly medicated at the time of the commission of the offense; (3) negotiate a more appropriate and favorable plea agreement; and (4) effectively argue Chapin's mental health history and condition of depression as a mitigating factor for sentencing for the convicted offense.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or

unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Dawn*, 320 Neb. 342, 27 N.W.3d 9 (2025).

An appellate court resolves claims of ineffective assistance of counsel on direct appeal only where the record is sufficient to conclusively determine whether trial counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance as matters of law. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025). An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id*. Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *Id*.

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Chapel was convicted of first degree assault, a Class II felony, punishable by one to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Supp. 2025). Chapel's sentence of 49 to 50 years' imprisonment is within the statutory limits. Nevertheless, Chapel argues that despite an array of mitigating circumstances, he was sentenced to nearly the maximum term of imprisonment. Chapel points to his scant criminal history, his age, and his generally productive life.

Because it is undisputed that Chapel's sentence falls within the statutory limits, the question is whether the district court abused its discretion in the sentence it imposed upon him. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed. *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025).

In determining a sentence to be imposed, the relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Hagens, supra*. It is not the proper function of an appellate court to conduct a de novo review of the record to determine what sentence it would impose. *Id*.

The PSR shows that Chapel was 51 years of age at the time of this occurrence. He has an associate's degree and was employed prior to this incident. His only criminal history consists of traffic violations. Chapel and Emily have three daughters and are now divorced. Chapel has four older children from previous marriages. Prior to this incident, Chapel was treated for depression and anxiety and was prescribed medication. He claimed that he was heavily medicated at the time of the assault and has no memory of the event. Chapel scored in the overall high risk range to reoffend on both the Level of Service/Case Management Inventory and the Domestic Violence Offender Matrix. According to the PSR, Chapel reported to the probation officer that he does not think he is safe to be free, and that he should be sentenced to life or 50 years. The PSR includes a lengthy victim impact statement from Emily.

The district court indicated that it had reviewed the PSR. The court concluded that imprisonment is necessary for the protection of the public because the risk is substantial that during any period of probation the defendant would engage in additional criminal conduct and because a lesser sentence would depreciate the seriousness of Chapel's crime and promote disrespect for the law. There is no indication that the court took any inappropriate factors into account when determining the sentence or failed to consider any mitigating factors. We find no abuse of discretion in the sentence imposed.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Before addressing Chapel's claims that he received ineffective assistance of trial counsel, we first set forth certain legal principles and procedural requirements that govern such claims on direct appeal.

When reviewing an ineffective assistance of counsel claim on direct appeal, the question is whether the record affirmatively shows that the defendant's trial counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025). There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. See *id*. Ultimately, the Constitution guarantees criminal defendants only a fair trial and a competent attorney. *Id*.

As mentioned above, on direct appeal, an appellate court only addresses claims of ineffective assistance of counsel that can be conclusively determined from the record. *Id*. The record on appeal is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*. Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires examination of facts not contained in the record. *Id*.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. See *id.* When a claim of ineffective assistance of counsel is raised on direct appeal, appellant is not required to allege prejudice. *Id*. However, on direct appeal in a criminal case, claims of ineffective assistance must be both specifically assigned and specifically argued in the appellant's brief. *Id*. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege the conduct that is claimed to constitute deficient performance. *Id*. With these legal principles in mind, we address Chapel's claims of ineffective assistance of trial counsel.

### (a) Failure to Advocate Regarding Mental Health

Chapel first assigns that his trial counsel was ineffective for failing to "effectively advocate regarding [his] mental health history of depression, and related diagnoses, as an exculpatory factor for his guilt of the alleged offenses." Brief for appellant at 5. This assignment of error does not specify the alleged deficient conduct or what counsel failed to do to effectively advocate for Chapel. Since Chapel voluntarily chose to plead no contest to the assault charge, it is further

unclear what counsel should have done to prove Chapel's innocence. This assignment of error is insufficiently raised. See *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025) (generalized and vague assignment of error that does not advise appellate court of issue will not be considered). An appellate court is not required to "scour" the argument section of the brief to find more clarity or specificity regarding the assigned error. *Id.* This claim is insufficiently pled and will not be considered.

### (b) Failure to Investigate
### Intoxication/Diminished Capacity Defense

Chapel next assigns that trial counsel was ineffective for failing to "investigate or argue an intoxication defense and/or diminished capacity defense because [he] was improperly or overly medicated at the time of the commission of the offense." Brief for appellant at 5. At the plea hearing, Chapel affirmed that he had discussed the possible defenses with his counsel. However, the record is silent regarding any discussions between Chapel and his counsel regarding his alleged intoxication or diminished capacity at the time of the incident. The record is insufficient to decide this issue on direct appeal, but it is preserved for postconviction review.

### (c) Failure to Negotiate Favorable Plea Agreement

Chapel next assigns that his trial counsel was ineffective for failing to "negotiate a more appropriate and favorable plea agreement." *Id.* This claim is refuted by the record. The plea agreement included the dismissal of two additional felony charges: a Class II felony with a potential sentence of 1 to 50 years, and a Class IIIA felony, with a potential sentence of up to 3 years. Further, Chapel affirmed that he was satisfied with his attorney's performance. Chapel cannot show that trial counsel was deficient in negotiating a favorable plea agreement.

### (d) Failure to Argue Mitigating Factors

Finally, Chapel assigns that his attorney failed to "effectively argue [his] mental health history and condition of depression as a mitigating factor for sentencing for the convicted offense." *Id.* This claim is also refuted by the record. First, extensive information was contained in the PSR outlining Chapel's mental health history and conditions. Second, Chapel's trial counsel asked the district court to consider Chapel's multiple suicide attempts, his hospitalization, therapy, and medication. Counsel stated that Chapel was taking a mixture of prescribed medications on the night of the incident. He noted Chapel's diagnoses of serious mental illnesses, including depression, post-traumatic stress disorder, and traumatic brain injury. And, Chapel referred to the "unstable nature of [his] mental health" during allocution. Chapel cannot show that counsel was deficient in failing to argue mitigating factors at sentencing.

### VI. CONCLUSION

The district court did not abuse its discretion in the sentence imposed. Chapel's claims of ineffective assistance of counsel are either insufficiently pled or refuted by the record, except for the claim that trial counsel failed to investigate an intoxication or diminished capacity defense, which claim is preserved.

AFFIRMED.